UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AIMEE VANHOUTER ,

                                    Plaintiff,                            6:19-CV-6100Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #16.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on October 22, 2015, alleging disability beginning March 27, 2014, at the age of 30, due to an injured knee, polycystic kidney disease, frequent urinary tract infections, kidney stones, type II diabetes, bilateral ACL reconstruction, patella tendonitis/chronic pain and swelling, high blood pressure, allergy to the sun and polystic ovary syndrome. Dkt. #8, pp.74-75.

On February 16, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Dawn Blythe, at an administrative hearing before Administrative Law Judge ("ALJ"), Brian Kane. Dkt. #8, pp.32-71. Plaintiff testified that in 2016 and 2017, plaintiff worked as a cashier at Kwik Fill, which included stocking the cooler, making coffee and shoveling the front walkway during the winter. Dkt. #8, pp.36-38. Plaintiff quit that job on August 18, 2017 because she would come home in pain. Dkt. #8, p.39. In 2014, plaintiff participated in a work program through the Department of Social Services, shredding papers at DSS, cleaning cages at the Humane Society and counting bags coming off a machinery roll at Maco Bags. Dkt. #8, pp.42-43. She could not continue at the Humane Society because of the bending and climbing required, but Maco Bags allowed her to alternate sitting and standing. Dkt. #8, p.43. Plaintiff has a General Equivalency Diploma ("GED"). Dkt. #8, p.51.

Plaintiff testified that she is unable to work because employers do not wish to accommodate her need to alternate sitting and standing and do not wish to accommodate her many doctor appointments. Dkt. #8, p.57. She testified that standing for long periods of time causes excruciating burning in her knees which radiates up to her hips. Dkt. #8, p.58. She is further limited by carpal tunnel in both wrists, which causes her fingertips to go numb and drop things at least five times a day. Dkt. #8, pp.58-60. Her kidney disease causes back spasms when she stands to do dishes. Dkt. #8, p.62. At least once a week, her blood sugar drops dangerously low. Dkt. #8, p.65. Her boyfriend helps her dress, because bending over to put on pants causes her back to spasm and she can't grasp her shirt to get it over her head or bend over to get her shoes on. Dkt. #8, p.65. She lives upstairs. Dkt. #8, p.66. She walked to the Kwik Fill

when she worked there, describing the distance as a good 20-30 minute walk which required three breaks. Dkt. #8, pp.67-68. Plaintiff cooks meals by alternating standing at the stove with sitting at her table. Dkt. #8, p.68.

The VE determined that if plaintiff could perform work at the light[1] exertional level, she could perform her past work as a telephone solicitor, which is a semi-skilled, sedentary position; fast food worker, which is an unskilled light position; children's attendant; and cashier.  Dkt. #8, p.54. If plaintiff could only stand for one hour per workday, the VE testified that plaintiff could only perform her past work as a telephone solicitor. Dkt. #8, p.55. If she required a ten minute break every hour to change position, the VE testified that she would not be able to perform her past work as a telephone solicitor, nor would she be capable of performing any work. Dkt. #8, p.55. The VE clarified that any more than 10 percent off task on a given day or any more than one absence per month would preclude employment. Dkt. #8, pp.55-56.

The ALJ rendered a decision that plaintiff was not disabled on March 16, 2018. Dkt. #8, pp.11-22. The Appeals Council denied review on December 10, 2018.

---

[1] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

Dkt. #8, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 6, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is

not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had engaged in substantial gainful activity since her alleged disability onset date of March 27, 2014, *to wit*, between November 2014 and September 2015 and between July 2016 and August 2017; (2) plaintiff's polycystic kidney disease, diabetes mellitus, bilateral carpal tunnel syndrome,[2] obesity

---

[2] In contradiction to the inclusion of blateral carpal tunnel syndrome in the list of severe impairments set forth in the heading of paragraph four of the ALJ's decision, the ALJ explains in the body of paragraph 4 that he did not consider this to be a severe impairment because plaintiff had good range of motion and grip strength upon examination, a specialist observed intact sensation and no Tinel's sign at the wrists, electrodiagnostic testing suggested "borderline carpal tunnel syndrome bilaterally" and the impairment had not been present for 12

and bilateral knee pain status post ligament reconstruction constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform the full range of light work except that plaintiff is limited to standing for one hour during a workday; and (5) plaintiff was capable of performing her past work as a cashier, children's attendant and fast food worker, each of which were unskilled, light exertion positions and was not, therefore, disabled within the meaning of the SSA. Dkt. #8, pp.16-21.

Plaintiff argues that the ALJ substituted his lay judgment for the medical opinion evidence in determining plaintiff's RFC. Dkt. #10-1, pp.13-18. Specifically, plaintiff argues that the opinion evidence of Dr. Ling and Dr. Brown do not support the ALJ's determination that plaintiff could perform the full range of light work with a standing limitation of one hour. Dkt. #10-1, pp.14-16. Plaintiff argues that the opinions of her treating physicians require a sit/stand alteration in plaintiff's work day, which the VE testified would preclude work. Dkt. #10-1, p. 17.

The Commissioner responds that the ALJ's RFC is supported by substantial evidence of record and that it is the ALJ's responsibility to weigh such evidence in assessing plaintiff's RFC. Dkt. #14-1, pp.6-12.

---

months. Dkt. #8, p.17. The Court notes that plaintiff was diagnosed with borderline carpal tunnel syndrome bilaterally on September 7, 2017 with a recommended treatment of night splints and anti-inflammatories. Dkt. #8, pp.460 & 484.

The relevant medical evidence in this matter reveals that Christopher Brown, M.D., performed a right knee hamstring autograft reconstruction on plaintiff on July 17, 2014. Dkt. #8, p.390. Upon examination on March 11, 2015, Dr. Brown noted that plaintiff continued to have pain in her right knee, despite modification of activities and physical therapy, opining that her lack of response to these conservative measures has to do with body habitus and rehabilitation. Dkt. #8, p.390. Dr. Brown allowed plaintiff to return to work with a the ability to alternate sit/stand to work until further notice. Dkt. #8, pp.390 & 493. Upon examination on March 18, 2015, Dr. Brown noted that plaintiff was eight months out after right knee autograft hamstring reconstruction with patella tendinitis and continued weakness. Dkt. #8, p.391. Dr. Brown recommended activity modification and physical therapy. Dkt. #8, p.391. Upon examination on May 15, 2015, plaintiff reported some improvement with activities and less pain. Dkt. #8, p.393.

On September 11, 2015, plaintiff sought treatment for chronic instability of her left knee. Dkt. #8, p.395. An MRI revealed a chronic ACL tear and complex bucket handle tear of the meidal meniscus with a displaced bucket hand fragment in the intracondylar notch and a 7 mm loose body in the lateral suprapatellar bursa. Dkt. #8, p.395. Dr. Brown performed an allograft ACL reconstruction, partial medial meniscectomy and loose body removal on the left knee on September 15, 2015. Dkt. #8, pp.396 & 477.

Carolyn Ling, M.D., conducted an internal medicine examination of plaintiff on November 30, 2015. Dkt. #8, p.313. Dr. Ling observed a limping gait and inability to walk on heels and toes, as well as one-quarter squat secondary to knee pain. Dkt. #8, p.314. Dr. Ling observed that plaintiff was able to get on and off of the examination table and rise from a chair without difficulty. Dkt. #8, p.314. Plaintiff's right knee had full range of motion, but her left knee flexion was limited to 120 degrees with no extension. Dkt. #8, p.315. Dr. Ling opined that plaintiff had moderate limitations for prolonged standing, walking, squatting and kneeling secondary to her chronic knee pain and moderate limitations in standing and walking secondary to her right heel pain. Dkt. #8, p.316. An x-ray of plaintiff's left knee revealed early degenerative changes. Dkt. #8, p.317.

On February 24, 2016, plaintiff's examination revealed full extension in flexion of plaintiff's left knee. Dkt. #8, p.477. Dr. Brown released plaintiff to return to work with light duty of alternate sit to stand, with no work on slippery floors. Dkt. #8, p.477. Upon examination on April 20, 2016, plaintiff complained of pain about the knee intermittently with her activities. Dkt. #8, p.478. Dr. Brown advised plaintiff to work on range of motion, stretching and strengthening exercises. Dkt. #8, p.478.

The ALJ afforded some weight to Dr. Brown's March 11, 2015 opinion that plaintiff was able to work, but would need to alternate sitting and standing, noting that although the records show the claimant had knee pain, her range of motion has been good since surgery. Dkt. #8, p.21. The ALJ referenced Dr. Brown's February 24, 2016

opinion that plaintiff could return to work with light duty of alternate sit to stand, but did not consider it as a medical source opinion. Dkt. #8, p.20. The ALJ afforded Dr. Ling's opinion some weight based on her program knowledge, but noted that the exam findings were relatively mild and only one knee had any limitations in range of motion. Dkt. #8, p.20.

An ALJ is required to consider and evaluate every medical opinion received, regardless of its source. 20 C.F.R. § 416.927(c). Generally speaking, the ALJ will afford more weight to the opinion of a treating physician because he or she is most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. *Moscatello v. Saul*, 18-CV-1395, 2019 WL 4673432, at *11 (S.D.N.Y.Sept. 25, 2019), *citing* 20 C.F.R. § 416.927(c)(2). Thus, where the treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), quoting 20 C.F.R. § 404.1527(c)(2). The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v.*

*Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). If the ALJ fails to provide a sufficient basis for discrediting the opinion of a treating physician, remand is required. *Id.* A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006).

The opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability). The factors to be considered in evaluating opinions form non-treating medical sources are the same as those for assessing treating sources, except that the first factor is replaced with consideration of whether the non-treating source examined the plaintiff. *White*, 414 F. Supp.3d at 383.

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical

sources cited in his decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018). However, an ALJ may not substitute his own lay opinion for those of medical experts. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *See Biro v. Comm'r of Soc. Sec'y*, 335 F. Supp.3d 464, 469 (W.D.N.Y. 2018) (ALJ is not a medical professional and is not qualified to assess a plaintiff's RFC on the basis of bare medical findings).

In the instant case, the ALJ failed to provide sufficient explanation for his rejection of Dr. Brown's opinion that plaintiff would need to alternate sitting and standing. Dr. Brown was plaintiff's surgeon for both her left and right knee surgeries and maintained a treating relationship with plaintiff over several years. His opinion as to plaintiff's limitation is not inconsistent with his treatment notes or the findings of the consultative examiner. Dr. Brown's opinion is also consistent with plaintiff's work during her period of alleged disability at a position where she was allowed to alternate sitting and standing. While the ALJ's limitation of one hour of standing per day is not incompatible with the consultative examiner's determination of a moderate limitation for prolonged standing, walking, squatting and kneeling, the ALJ's failure to explain why he rejected a treating physician's opinion that plaintiff would need to alternate sit to stand constitutes legal error which precludes the Court from finding plaintiff's RFC supported by substantial evidence. *See White*, 414 F. Supp.2d at 384 (conclusory explanation as to why ALJ rejected treating physician's limitations insufficient for Court to evaluation whether plaintiff's RFC supported by substantial evidence); *Dioguardi*, 445 F. Supp.2d

at 298 ("With no explanation provided, it is not possible for the Court to know why, when faced with differing but equally-weighted opinions from two physicians, the ALJ chose to disregard the evidence that was more favorable to plaintiffs claim.").

Plaintiff seeks remand solely for the calculation of benefits based upon the VE's testimony plaintiff would not be able to work if she required a ten minute break every hour.  Dkt. #10-1, p.17. However, reversal and remand solely for the calculation of benefits is warranted only when the record persuasively demonstrates the plaintiff's disability and there is no reason to conclude that additional evidence might support the Commissioner's claim that the plaintiff is not disabled. *White*, 414 F. Supp.3d at 385. In the instant case, even assuming that Dr. Brown's opinion was entitled to controlling weight, the Court does not believe that it necessarily follows that a requirement that plaintiff be allowed to alternate between sitting and standing equates to a ten minute break every hour. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983) (requiring substantial record evidence to support the assumption upon which the vocational expert's opinion is based). Accordingly, this matter is remanded for further proceedings, *to wit*, for the ALJ to address Dr. Brown's opinion that plaintiff must be able to alternate between sitting and standing and, if that opinion is afforded controlling weight, to obtain testimony from a VE as to whether there are any jobs plaintiff could perform with such a limitation. *See* S.S.R. 83-12, 1983 WL 31253, at *4 (VE testimony required to clarify the implications for the occupational base where an individual must alternate periods of sitting and standing because such an individual is generally not

capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged standing or walking contemplated for most light work).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. 14), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
August 10, 2020

      *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**